IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRANKLIN D. FENNELL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 09-163-SLR |
| | ) |
| DALE RODGERS, et al., | ) |
| | ) |
| Defendants. | ) |

Franklin D. Fennell, James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

Melony R. Anderson, Esquire, Balick & Balick, LLC, Wilmington, Delaware. Counsel for Defendant Dr. Dale Rodgers.

Devera Breeding Scott, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant James Scarborough.

**MEMORANDUM OPINION**

Dated: January 26, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Franklin D. Fennell ("plaintiff") is an inmate incarcerated at the James T. Vaughn Correctional Center ("VCC"), Smyrna, Delaware, who proceeds pro se and has been granted leave to proceed in forma pauperis. On March 10, 2009, he filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] (D.I. 2) The case proceeds on the first amended complaint. (D.I. 13) Presently before the court are motions for summary judgment filed by defendant Dr. Dale Rodgers ("Dr. Rodgers") and Major James Scarborough ("Scarborough"). (D.I. 35, 42) Plaintiff opposes Scarborough's motion. (D.I. 46) Also pending is plaintiff's motion for reconsideration of the denial of his request for counsel. (D.I. 44) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons set forth below, the court will grant defendants' motions for summary judgment and will deny as moot plaintiff's motion.

## II. BACKGROUND

Plaintiff alleges that he was not provided adequate treatment for methicillin-resistant staphylococcus aureus ("MRSA") and Type 2 diabetes. More particularly, plaintiff alleges that defendant Scarborough:[2] (1) failed to implement procedures to halt correctional staff from interfering with plaintiff's medical treatment during the time he was housed at the Medium High Security Unit ("MHU") "as late as August 24, 2007;" (2) was aware of his medical condition; (3) on unknown dates returned plaintiff's grievances complaining of his medical treatment as "non-grievable;" and (4) plaintiff's medical

---

[1]Pursuant to the prisoner mailbox rule, the original complaint was filed on March 10, 2009. See Houston v. Lack, 487 U.S. 266 (1988).

[2]At the time, defendant was a major and a security superintendent at the VCC.

treatment while housed in MHU was inadequate as a result of correctional staff informing medical staff "what plaintiff could not have." (D.I. 13, ¶ 8) In the complaint, Scarborough is sued only in his official capacity, but other filings by plaintiff indicate that he also sues Scarborough in his individual capacity. (See D.I. 46)

Scarborough has been employed by the Delaware Department of Correction ("DOC") for over twenty years and has been a major/security superintendent at the VCC since January 8, 2006. He is responsible for performing the administrative security, custody, care, safety, and discipline programs at the VCC, and his duties include directing and controlling the correctional staff in the maintenance of security, order, and discipline of the facility. Scarborough does not know plaintiff. During the relevant time period, Scarborough's duties did not include implementing procedures for offenders to file requests for medical treatment. Nor is he involved in the grievance process and, to the best of his knowledge, he was not involved in any of plaintiff's grievances. Grievances submitted by plaintiff during the relevant time period make no mention of Scarborough. (D.I. 43, Scarborough aff.; Merson aff.)

Plaintiff alleges that Dr. Rodgers, medical director at VCC, is responsible for supervising the medical care provided to all inmates at VCC and that she: (1) failed to adequately train staff and implement procedures for plaintiff to receive medically appropriate care; (2) ordered plaintiff's placement in MHU knowing it was not conducive to his medical problems; (3) canceled plaintiff's pain medications on June 8, 2007 even though a physician indicated that he required physical therapy and additional exercise; and (4) prevented outside follow-up with a specialist even though it was necessary. (D.I. 13 at ¶ 9) Dr. Rodgers is sued in her individual capacity.

-2-

There is no indication in plaintiff's medical records that he contracted MRSA. The records reflect that, as of 2000, plaintiff had been diagnosed as HIV positive and had a history of multiple sites of squamous cell carcinoma and condyloma acuminata (i.e., genital warts). (D.I. 36 at 1)

On August 24 2005, plaintiff presented to thoracic surgeon Dr. Bruce Bolasny ("Dr. Bolasny") for evaluation. The examination revealed extensive genital warts involving the lower abdominal wall, scrotum and penis, and significant perianal warts. Some nodular purplish areas looked suspicious for mycosis fungoides, a condition occasionally associated with HIV. Dr. Bolasny recommended a consultation with a urologist and HIV specialist. (*Id.* at 2)

Plaintiff saw Dr. Richard Paul ("Dr. Paul"), a urologist, on October 31, 2005. Dr. Paul diagnosed left groin condylomata, with possible infected site and mycosis fungoides. Medication was ordered, and Dr. Paul indicated he would decide on an appropriate plan/treatment after discussion with his colleagues. (*Id.* at 3)

Plaintiff was admitted to Milford Memorial on December 13, 2005. Dr. Paul performed surgery to remove the extensive perineal condylomata. Following the procedure, Dr. David Cloney ("Dr. Cloney"), was consulted for wound management. Dr. Cloney performed an excision and skin graft on January 10, 2006. The skin graft failed due to infection, and Dr. Cloney performed a second skin graft on January 31, 2006. (*Id.* at 4-9)

Plaintiff returned to the VCC infirmary on March 1, 2006 and was placed in Isolation. Dr. Cloney examined plaintiff on March 27, 2006, and he noted that the

wounds were "healing well without any signs of infection." They discussed plaintiff's activities including clearance to walk, shower, and return to regular population in one week. Dr. Cloney recommended a follow-up consultation in three months. Plaintiff was discharged from the infirmary on March 31, 2006. At his next follow-up with Dr. Cloney on July 5, 2006, Dr. Cloney observed a non-healing area at the inferior edge of the scrotum and right groin crease and evidence of recurrence on the right side of the rectum. Dr. Cloney recommended that plaintiff undergo a procedure to excise and/or fulgurate the recurrent/residual disease at perineum and/or rectum and/or groin, with a possible graft. (*Id.* at 12-17)

On August 17, 2006, Dr. Cloney performed two excisions. Plaintiff returned to the VCC infirmary that day. During plaintiff's follow-up visit on August 25, 2006, Dr. Cloney ordered Vicodin, ointment and dry dressing changes for the wounds, and requested follow-up in one month. At the follow-up visit on September 22, 2006, Dr. Cloney noted that the wounds appeared to be healing well, and he released plaintiff to his medical doctor, with follow-up as needed. Dr. VanDusen discontinued the Vicodin on June 8, 2007. (*Id.* at 19-23, 27)

Dr. Cloney next examined plaintiff on June 15, 2007. Plaintiff complained of right groin/perineal pain. Examination revealed no evidence of condyloma acuminata or squamous cell. Dr. Cloney recommend conservative management with gauze and NSAIDS (i.e., nonsteroidal anti-inflammatory drugs). Dr. Cloney noted that plaintiff "may have pain medication as needed per his physician" and follow-up as needed. Plaintiff had been using a wheelchair but, after plaintiff had seen Dr. Cloney who reported that

plaintiff was well-healed, Dr. Rodgers discontinued the wheelchair on July 26, 2007. Plaintiff was advised to increase his activities and walking. (*Id.* at 24-25, 28)

Plaintiff wrote to Dr. Cloney on June 23, 2009, and asked for "a detailed outline of specific addition[al] treatment you recommended in connection with my case." Dr. Cloney's office manager responded on September 29, 2009 that: "Upon review of your medical chart, Dr. Cloney has concluded no surgical care is indicated." (*Id.* at 26)

Dr. Rodgers moves for summary judgment on the ground that the record does not contain evidence from which a reasonable jury could find in favor of plaintiff. (D.I. 35) Scarborough moves for summary judgment on the grounds that he lacks personal involvement, is immune from suit, and plaintiff's Eighth Amendment rights were not violated. (D.I. 43) Plaintiff did not file a response to Dr. Rodgers' motion for summary judgment, but opposes Scarborough's motion. (D.I. 46)

## III. STANDARD OF REVIEW

The court shall grant summary judgment only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing

that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

Plaintiff did not respond to Dr. Rodgers' motion for summary judgment. Nonetheless, the court will not grant the entry of summary judgment without considering the merits of Dr. Rodgers' unopposed motion. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) (holding that "district court should not have granted summary judgment solely on basis that a motion for summary judgment was not opposed").

## IV. DISCUSSION

### A. Eleventh Amendment Immunity

Scarborough moves for summary judgment by reason of Eleventh Amendment immunity to the extent that plaintiff seeks to hold him liable in his official capacity. Plaintiff argues that Scarborough is not entitled to Eleventh Amendment immunity for the claims against him in his official capacity.

Plaintiff's position is not supported by the law. The Eleventh Amendment guarantees that non-consenting states may not be sued by private individuals in federal court unless Congress abrogates the states' immunity pursuant to a valid exercise of its power. *See Board of Trustees of the Univ. of Al. v. Garrett*, 531 U.S. 356, 363 (2001). State officials acting in their official capacities have the same Eleventh Amendment immunity from damage suits as the state itself. *See Hafer v. Melo,* 502 U.S. 21, 30 (1991). Hence, Scarborough, while acting in his official capacity, is immune from suit under the Eleventh Amendment. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 268 (1997); *Ali v. Howard,* 353 F. App'x 667, 672 (3d Cir. 2009) (not published). Therefore, the court will grant Scarborough's motion for summary judgment as to the claims raised against him in his official capacity.

**B. Personal Involvement**

Scarborough contends that summary judgment is appropriate because plaintiff failed to prove personal involvement as is required for a § 1983 claim. Plaintiff argues that Scarborough is directly responsible for rules and regulations governing correctional staff assigned to the area where he was housed and that Scarborough blatantly lied in reference to not being in charge of the area during the relevant time period.

Initially the court notes that it is evident plaintiff sued Scarborough based upon his supervisory position. As is well established, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable, and cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007). "Personal involvement can be shown through allegations of personal direction or of actual

knowledge and acquiescence." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

"Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, – U.S. – , 129 S.Ct. 1937, 1948 (2009). In *Iqbal*, the Supreme Court emphasized that "[i]n a § 1983 suit - here masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 129 S.Ct. at 1949. "Thus, when a plaintiff sues an official under § 1983 for conduct 'arising from his or her superintendent responsibilities,' the plaintiff must plausibly plead and eventually prove not only that the official's subordinates violated the Constitution, but that the official by virtue of his own conduct and state of mind did so as well." *Dodds v. Richardson*, 614 F.3d 1185, 1198 (11th Cir. 2010) (quoting *Iqbal* 129 S.Ct. at 1949.) The factors necessary to establish a § 1983 violation will vary with the constitutional provision at issue. *Id.*

Under pre-*Iqbal* Third Circuit precedent, "[t]here are two theories of supervisory liability," one under which supervisors can be liable if they "established and maintained a policy, practice or custom which directly caused [the] constitutional harm," and another under which they can be liable if they "participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations." *Santiago v. Warminster Twp.*, – F.3d –, No. 10-1294, 2010 WL 5071779, at *4 n.5 (3d Cir. Dec. 14, 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (second

alteration in original)). "Particularly after *Iqbal*, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to demonstrate a plausible nexus or affirmative link between the directions and the specific deprivation of constitutional rights at issue." *Id.* at *5.

The Third Circuit has recognized the potential effect that *Iqbal* might have in altering the standard for supervisory liability in a § 1983 suit but, to date, has declined to decide whether *Iqbal* requires narrowing of the scope of the test. *Santiago*, 2010 WL 6082779 at * 5 n.8; *see, e.g., Bayer v. Monroe County Children and Youth Servs.*, 577 F.3d 186, 190 n.5 (3d Cir. 2009) (In light of *Iqbal*, it is uncertain whether proof of personal knowledge, with nothing more, provides a sufficient basis to impose liability upon a supervisory official.). Hence, it appears that, under a supervisory theory of liability, and even in light of *Iqbal*, personal involvement by a defendant remains the touchstone for establishing liability for the violation of a plaintiff's constitutional right.[3] *Williams v. Lackawanna County Prison*, Civ. No. 07-1137, 2010 WL 1491132, at *5 (M.D. Pa. Apr. 13, 2010).

Facts showing personal involvement of the defendant must be asserted; such assertions may be made through allegations of specific facts showing that a defendant expressly directed the deprivation of a plaintiff's constitutional rights or created such policies where the subordinates had no discretion in applying the policies in a fashion

---

[3]"'Supervision' entails, among other things, training, defining expected performance by promulgating rules or otherwise, monitoring adherence to performance standards, and responding to unacceptable performance whether through individualized discipline or further rulemaking." *Sample v. Diecks*, 885 F.2d 1099, 1116 (3d Cir. 1989). "For the purpose of defining the standard for liability of a supervisor under § 1983, the characterization of a particular aspect of supervision is unimportant." *Id.* at 1116-17.

other than the one which actually produced the alleged deprivation; *e.g.*, supervisory liability may attach if the plaintiff asserts facts showing that the supervisor's actions were "the moving force" behind the harm suffered by the plaintiff. *See Sample v. Diecks*, 885 F.2d 1099, 1117-118 (3d Cir. 1989); *see also Iqbal*, 129 S.Ct. at 1949-54; *City of Canton v. Harris*, 489 U.S. 378 (1989); *Heggenmiller v. Edna Mahan Corr. Inst. for Women*, 128 F. App'x 240 (3d Cir. 2005) (not published).

Plaintiff has not refuted Scarborough's sworn statement that Scarborough does not know plaintiff, that his duties did not include implementing procedures for requesting medical treatment, and that he was not involved in grievances submitted by plaintiff. While plaintiff argues that Scarborough "lied," he provides no evidence to support his argument. Moreover, as will be discussed below, plaintiff received continuing treatment for his medical conditions, and there is no evidence of record showing a violation of his constitutional rights. Finally, the evidence of record does not indicate that Scarborough directed the deprivation of plaintiff's constitutional rights or was the moving force behind plaintiff's alleged constitutional deprivations.

A reasonable jury could not find that Scarborough was personally involved in plaintiff's claims. Therefore, the court will grant Scarborough's motion for summary judgment.

### C. Eighth Amendment

Dr. Rodgers contends that summary judgment should be entered in her favor because: (1) there is no evidence of record that plaintiff contracted MRSA; (2) plaintiff is unable to prove the elements of a failure to supervise claim; (3) she had no personal involvement in the stopping of pain medication and, regardless, the medical record

reflects that plaintiff had no medical need for pain medications during the relevant time period; (4) she had no control over plaintiff's housing placement and the medical record does not indicate that plaintiff should have been housed in the infirmary beyond the dates he was housed there; (5) the medical record does not reflect that physical therapy was medically indicated; and (6) the medical record does not indicate that additional bathing time was medically indicated.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). In addition, "mere disagreement as to the proper

medical treatment" is insufficient to state a constitutional violation. See *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted). Finally, the United States Court of Appeals for the Third Circuit has concluded that prison administrators cannot be deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) (discussing *Durmer*, 991 F.2d at 69). "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* at 236.

Plaintiff's claim accrued on March 10, 2007. By this time, plaintiff had been continually treated and underwent surgical procedures on at least four occasions for the medical conditions of squamous cell carcinoma and condyloma acuminata.[4] When plaintiff was reevaluated on March 27, 2006, following debridement and a skin graft, he was cleared to walk, shower, and return to the general population within one week. He subsequently underwent another medical procedure in August 2006.

During his surgical for follow-up on June 15, 2007, plaintiff complained of pain. Dr. Cloney noted no evidence of condyloma acuminata or squamous cell and recommended conservative management with NSAIDS and pain medications as

---

[4]Plaintiff mistakenly refers to the condition as MRSA.

needed per plaintiff's physician, with surgical follow-up as needed. Plaintiff had been prescribed Vicodin but Dr. VanDusen, not Dr. Rodgers, stopped the medication on June 8, 2007.

Plaintiff had used a wheelchair for some time. After plaintiff's last follow-up examination with Dr. Conley, who reported that plaintiff was well-healed, Dr. Rodgers discontinued wheelchair use. Plaintiff was able to walk, and Dr. Rodgers discussed with him the need to increase his activities. When asked by plaintiff on June 23, 2009, what additional treatment was needed, Dr. Cloney concluded that no surgical care was indicated.

Nothing in the record indicates that plaintiff contracted MRSA. The record indicates that plaintiff received continual medical care for his diagnosed medical conditions. Therefore, no reasonable jury could find that Dr. Rodgers, as the medical director, failed to supervise and train the medical staff so that plaintiff would receive medically appropriate care. In addition, the record does not support a finding that Dr. Rodgers discontinued plaintiff's pain medication; it was discontinued by Dr. VanDusen. Plaintiff's medical records do not indicate a medical need for his continual placement in the infirmary, physical therapy and additional exercise, or additional bathing time. Plaintiff's claims in this regard are simply not borne by the record. Finally, the record does not support a finding that additional follow-up with Dr. Cloney was indicated.

Moreover, there is no evidence that Scarborough, as a prison administrator, was deliberately indifferent to plaintiff's medical needs. The unrefuted evidence is that Scarborough does not know plaintiff. Regardless, as a prison administrator he is

entitled to rely upon the medical provider that plaintiff received the medical care he needed. As discussed, plaintiff received medical care.

No reasonable jury could find a violation of plaintiff's Eighth Amendment rights by either Dr. Rodgers or Scarborough. Therefore, the court will grant their motions for summary judgment.

## V. CONCLUSION

For the reasons discussed above, the court will grant defendants' motions for summary judgment and will deny as moot the remaining pending motion filed by plaintiff.

An appropriate order will be entered.